IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RONALD WARD | ) |
| Plaintiff, | ) |
| vs. | ) NO. 2:14-CV-00001 |
| SOO LINE RAILROAD COMPANY, d/b/a Canadian Pacific Railway, Ltd., a foreign corporation, SEATS, INCORPORATED, a foreign corporation; KNOEDLER, INC., d/b/a Knoedler Manufacturers, Inc., a foreign corporation, NORDIC GROUP OF COMPANIES, LTD., a foreign corporation, GE TRANSPORTATION, a division of GE,INC., a foreign corporation. | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion to Dismiss Complaint pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendants Nordic Group of Companies, Ltd. ("Nordic") and Seats, Incorporated ("Seats") on November 3, 2015 (DE #53), and Defendant General Electric Company's ("GE") Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), filed on November 11, 2015 (DE #55). For the reasons set forth below, Nordic and Seat's Motion to Dismiss (DE #53) is **GRANTED,** and GE's Motion to Dismiss (DE #55) is **GRANTED.** The Clerk is **ORDERED** to **DISMISS** Counts II, III, VI, VII, and VIII of the Complaint (DE #65-1) **WITH PREJUDICE.** Count I of the

Complaint (DE #65-1), and Count III of the Second Amended Complaint (DE #28), remain pending.

BACKGROUND

Plaintiff Ronald Ward ("Ward") allegedly was injured on June 8, 2013, while sitting on a locomotive engineer's seat that collapsed. At that time, Ward was employed by defendant Soo Line Railroad Company d/b/a Canadian Pacific Railway, Ltd. ("Soo Line") and was assigned to operate a locomotive on a job commonly known as the "Windsor (Canada) to Elkhart (Indiana)" job. Ward's injury allegedly occurred in Windsor, Ontario, Canada. On January 2, 2014, Ward filed a federal complaint against Soo Line under Cause Number 2:14-CV-1. The Court later granted Soo Line's uncontested motion for judgment on the pleadings, and dismissed Counts I and II of Ward's Second Amended Complaint. (DE #40.) Count III of the Second Amended Complaint remains pending against Soo Line, and is not the subject of the instant motions to dismiss. (*See* DE #28.)

On June 3, 2015, Ward filed a separate cause of action in Illinois state court, alleging claims against (1) Soo Line, (2) Nordic, (3) Seats, (4) GE, and (5) Knoedler, Inc. d/b/a Knoedler Manufacturers, Inc. ("Knoedler"). (DE #65-1.) The state court complaint ("Complaint") was removed to federal court, transferred to this division of the Northern District of Indiana, and opened

as Cause Number 2:15-CV-400.  Cause Numbers 2:14-CV-1 and 2:15-CV-400 have since been consolidated, with all filings to be filed only in Cause Number 2:14-CV-1.  Count I of the Complaint alleges negligence against Soo Line.  Count II alleges strict product liability, manufacturer defect, and design defect of the locomotive seat against Seats.  Count III alleges negligence against Seats.  Counts VI and VII allege the same theories of liability, respectively, against Nordic.  Count VIII alleges that GE negligently installed the locomotive seat that injured Ward, and failed to report problems with the seat and its installation instructions.[1]

In the pending motions to dismiss, Seats, Nordic and GE (together, "Defendants") argue that the Locomotive Inspection Act, 49 U.S.C. § 20701, *et seq.*, preempts all of Ward's claims against them.  The parties have fully briefed these motions.  Soo Line also submitted a brief opposing the motions to dismiss.  The motions are now ripe for adjudication.

DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted.  "To

---

[1]Ward voluntarily dismissed its claims against Knoedler (Counts IV and V of the Complaint) in September 2015.  (DE #49.)

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotations omitted); *see also Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011) (citation omitted) ("While the federal pleading standard is quite forgiving . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). *Iqbal* requires that a plaintiff plead content which allows this Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. 556 U.S. at 678.

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). In order to withstand a motion to dismiss, a complaint must allege

the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.,* 144 F.3d 448, 454-55 (7th Cir. 1998). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and, "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting in part *Twombly*, 550 U.S. at 569 n.14 (2007)).

Defendants assert that the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701, *et seq.*, preempts the field of regulating locomotive equipment, and thus bars Ward from asserting state law claims against them. The LIA provides that a railroad carrier may use a locomotive "only when the locomotive . . . and its parts and appurtenances . . . are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1). Here, the parties agree that a locomotive cab seat is an appurtenance of a locomotive under the LIA. *See Kelly v. Ill. Cent. R. Co.*, No. 08-1052, 2010 WL 271959, at *17 (C.D. Ill. Jan. 12, 2010) (citing 49 C.F.R. § 229.119).[2]

---

[2] Ward concedes that the instant case "concerns defective seats[, which] is clearly a circumstance of failure of essential equipment that falls within the contemplation of the LIA." (DE #65 at 12; DE #66 at 11 (same); *see* DE #65 at 12 (Ward "seeks redress for injuries caused by a defective locomotive seat, a condition and injury regulated and contemplated by the LIA"); DE #66 at 12 (same).)

While the LIA contains no express preemption clause, the United States Supreme Court has held that the LIA's predecessor, the Boiler Inspection Act, "was intended to occupy the field," preempting any state action pertaining to "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances."[3] *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 611, 47 S. Ct. 207, 71 L. Ed. 432 (1926). In 2012, the Supreme Court held that the LIA preempted state law products liability claims against railroad component manufacturers and distributors. *Kurns v. R.R. Friction Prods. Corp.*, 132 S. Ct. 1261, 1267-68 (2012). In *Kurns,* the Supreme Court reaffirmed its holding in *Napier*, explaining that the "LIA manifest[s] the intention to occupy the entire field of regulating locomotive equipment." *Id*. at 1267 (citing *Napier*, 272 U.S. at 611). The Supreme Court determined that *Napier's* "categorical conclusion admits of no exception for state common-law duties and standards of care." *Id*. at 1269. Thus, "state common-law duties and standards of care directed to the subject of locomotive equipment are pre-empted by the LIA." *Id*. at 1270. Because the petitioners' claims were aimed at the equipment of locomotives, they were

---

[3] Because the Boiler Inspection Act is the predecessor of the LIA, the Court refers to both versions of the statute as the LIA.

directed to the same subject as the LIA, and fell within the preempted field. *Id*. at 1268-70.

Seats and Nordic argue that Ward's claims against them are preempted by the LIA because the claims allege that the locomotive seat at issue was defective and unsafe as designed and manufactured. Counts II and VI assert claims of strict product liability, design defect, and manufacturer defect, alleging that Seats and Nordic designed and manufactured the seat that caused Ward's injuries, that the seat broke because of design and manufacturing defects, and that Seats and Nordic placed inadequate warnings, directions, or instructions on the proper use of the seat affixed to or accompanying the seat. (DE #65-1 at 4-8, 17-21.) Counts III and VII allege that Seats and Nordic, respectively, negligently designed, manufactured, distributed and/or sold the seat that caused Ward's injury. (*Id*. at 9-10, 21-23.)

The Supreme Court has held that "state-law design-defect and failure-to-warn claims fall within the field of locomotive equipment regulation pre-empted by the LIA." *Kurns*, 132 S. Ct. at 1270; *see also Bell v. Illinois Cent. R. Co.*, 236 F. Supp. 2d 882, 890 (N.D. Ill. 2001) ("Given the national scope of the LIA's regulation, it is axiomatic that state tort law regarding locomotive design, manufacture, and inspection is preempted by the LIA."). Ward's claims against Seats and Nordic fall squarely

within the field of locomotive equipment regulation contemplated by the LIA. *See Kurns*, 132 S. Ct. at 1270 (holding claim for defective design to be preempted); *Evans v. Union Pac. R.R. Co.*, No. 13-cv-1732, 2015 WL 1945104, at *4 (D. Colo. Apr. 29, 2015) ("any defective design claim is preempted by the LIA"); *Estate of Brust v. ACF Indus., LLC*, 127 A.3d 729, 737 (N.J. Super. Ct. 2015) ("state law claims for defective design of the locomotive equipment, and for failure to warn about its risks, fall within the field preempted by the LIA"); *Bonner v. Union Pacific R.R. Co.,* No. CV03-134, 2005 WL 1593635, at *10 (D. Idaho Jul. 6, 2005) (holding LIA preempted common law claim for failure to warn); *Law v. General Motors Corp.*, 114 F.3d 908, 910-12 (9th Cir. 1997) (holding LIA preempted railroad employees' claims of strict liability, negligence, and failure to warn against manufacturers of locomotive equipment). As such, Counts II, III, VI, and VII against Seats and Nordic are preempted by the LIA.

GE argues that the LIA also preempts Ward's negligence claim against it. Count VIII alleges that GE negligently: (1) failed to follow and adhere to the manufacturer's instructions on the proper installation of the locomotive seat; (2) failed to use the proper tools and equipment for the safe installation of the seat; (3) failed to train its employees in the proper way to install locomotive seats; (4) failed to report that the seats "were inferior and not equal to railroad industry standards;" (5) failed

-8-

to report that the seat's instructions were faulty; (6) failed to report that the seats "did not meet the performance standard for locomotive cabin seats;" (7) failed to report that the seat installation instructions were incomplete; (8) continued to improperly install locomotive seats; and (9) failed to properly install the seat at issue, which allegedly broke as a result of GE's improper installation. (DE #65-1 at 24-25.)

Ward argues that a negligent installation claim is not contemplated by the LIA, and therefore, his claim against GE is not preempted. Ward maintains that the LIA preempts the field of "the physical composition of the locomotive equipment," and does not extend to installation of such equipment. (DE #65 at 14 (quoting *Kurns*, 132 S. Ct. at 1272 (Sotomayor, J., concurring in part and dissenting in part).) He cites no authority holding that the installation of locomotive equipment does not fall within LIA preemption.

The Court rejects Ward's attempt to redefine the preemption field. The Supreme Court has held that LIA preemption applies to the "design, the *construction*, and the material of every part of the locomotive and . . . of all appurtenances." *Napier,* 272 U.S. at 611 (emphasis added). The construction of a locomotive necessarily includes the installation of equipment onto the locomotive. Moreover, where claims are aimed at locomotive equipment, they are "directed to the same subject as the LIA," and

fall within the pre-empted field. *Kurns*, 132 S. Ct. at 1268; *see Oglesby v. Delaware & Hudson Ry. Co.*, 180 F.3d 458, 461 (2d Cir. 1999) (where alleging failure to provide instructional labels on a locomotive seat, "the relevant inquiry is not whether a label falls under the [LIA,] but whether a cab seat does"). Here, the locomotive seat is clearly part of the physical composition of the locomotive. Because claims of negligent installation of locomotive seats are directed at locomotive equipment, they are preempted by the LIA. *See Oglesby,* 180 F.3d at 461-62 (claim of failure to provide instructional labels on a locomotive seat was preempted by the LIA); *Union Pacific R.R. Co. v. Motive Equip. Inc.,* 714 N.W.2d 232, 238 (Wis. Ct. App. 2006) (claim of negligent installation of refrigerator on locomotive was preempted by the LIA). Therefore, Count VIII is preempted by the LIA.[4]

Ward attempts to avoid LIA preemption by asserting that the LIA does not apply to this case as a matter of law. He relies upon the Court's order granting Soo Line's uncontested motion for

---

[4] Ward does not address the Complaint allegations that GE negligently "failed to report" problems relating to locomotive seats. The Court will not develop Ward's arguments for him. *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties."). Ward's failure to develop an argument regarding these allegations results in waiver. Moreover, because GE's alleged failure to report problems with the seats is "directed at the equipment of locomotives," such claims are preempted by the LIA. *Kurns,* 132 S. Ct. at 1268 (holding the LIA preempted "failure-to-warn" claims because they were directed at locomotive equipment).

-10-

judgment on the pleadings of Ward's Second Amended Complaint. In that order, the Court dismissed two claims against Soo Line based on the LIA and the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* (DE #40.) The Court dismissed Ward's LIA claim because a plaintiff cannot maintain a stand-alone action under the LIA. (*Id*. at 2-3.) The LIA "does not create a right to sue but merely establishes a safety standard." *Coffey v. Ne. Illinois Reg'l Commuter R. Corp. (METRA),* 479 F.3d 472, 477 (7th Cir. 2007) (citing *Urie v. Thompson*, 337 U.S. 163, 188-89 & n.30, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949)). Contrary to Ward's assertion, the Court did not hold that the LIA does not apply to this matter.

The Court dismissed Ward's FELA claim because his injury allegedly occurred in Canada. (DE #40 at 2.) The FELA provides in part that every railroad carrier "while engaging in commerce between . . . any of the States . . . and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." 45 U.S.C. § 51. The FELA does not provide a remedy for railroad employees who are injured outside the United States. *New York Cent. R.R. Co. v. Chisholm*, 268 U.S. 29, 31, 45 S. Ct. 402, 69 L. Ed. 828 (1925).

Ward argues that because the FELA has no extraterritorial effect, "the LIA which can only be brought under the FELA likewise

has no application." (DE #65 at 6; DE #66 at 5 (same).) Courts have held that a railroad employee alleging a LIA violation against his employer must bring a FELA claim. *See, e.g., Urie,* 337 U.S. at 188 n.30 ("an employee injury suit alleging violation of the [LIA] is brought under the [FELA]"). However, Ward cites no case law holding that where a railroad employee is unable to assert a FELA claim against his employer, the LIA does not apply to state law claims against a manufacturer or installer of locomotive equipment.[5] Nor does Ward cite any other authority in support of this proposition.

The Court is unpersuaded by Ward's argument. The LIA does not create a right to sue, but it does establish a national safety standard for locomotive equipment. *Coffey*, 479 F.3d at 477. In enacting the LIA, Congress "manifest[ed] the intention to occupy the entire field of regulating locomotive equipment." *Kurns*, 132 S. Ct. at 1266. "[T]he LIA's broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across

---

[5] The Court notes that even if Ward could assert a FELA claim against his employer, he could not assert FELA claims against Defendants. FELA claims may only be asserted against railroad operators, not manufacturers. *Law*, 114 F.3d at 912; *Stevenson v. Union Pacific R.R. Co.*, 4:07-CV-522, 2009 WL 129916, at *2 (E.D. Ark. Jan. 20, 2009) (noting railroad employee "could not bring an action against Seats under the LIA, or under the FELA, which does not apply to manufacturers"); *Union Pacific*, 714 N.W.2d at 246 ("LIA applies to manufacturers, but FELA does not.") (citations omitted); *Bonner*, 2005 WL 1593635, at *9 (Congress "specifically drafted FELA as only applying to carriers and not manufacturers").

state lines." *Bell,* 236 F. Supp. 2d at 890. As the Ninth Circuit explained, "[t]he virtue of uniform national regulation is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state." *Law,* 114 F.3d at 910 (citations and internal quotations omitted). Ward's claims against Defendants seek to impose legal duties concerning the design, manufacture, and installation of locomotive seats, which clearly fall under the LIA. If allowed to proceed, such claims would undermine Congress's goal of uniform national regulation of locomotive equipment. *Law*, 114 F.3d at 911 (noting that if states were to adopt different liability-triggering standards, "Congress's goal of uniform, federal railroad regulation would be undermined"). For these reasons, the Court declines to hold that the LIA does not apply to the claims against Defendants.

Ward and Soo Line rely on *Delaware & Hudson Railway Company, Inc. v. Knoedler Manufacturers, Inc.*, 781 F.3d 656 (3d Cir. 2015), *cert. denied*, 136 S. Ct. 54, 193 L. Ed. 2d 30 (2015), to argue that the LIA does not preempt Ward's claims against Defendants. They assert that the LIA does not preempt a state law action that is based upon a federal standard of care. In *Knoedler,* the railroad had settled lawsuits brought by employees who had suffered injuries from defective locomotive seats. *Id*. at 658. The

railroad then filed an action against the locomotive seat supplier and maintenance service, alleging state law claims based on violations of the LIA. *Id*. at 659. Upon the defendants' motions to dismiss, the federal district court held that the railroad's claims for contribution, indemnification, and breach of contract were preempted by the LIA. *Id*. at 660. On appeal, the Third Circuit acknowledged the Supreme Court's holdings in *Napier* and *Kurns* that "a state may not impose its own duties and standards of care on the manufacture and maintenance of locomotive equipment." *Id*. at 662. "The question left unanswered by *Napier* and *Kurns* is whether the LIA preempts a state claim that is premised on a violation of the duties and standards of care stemming from the LIA itself." *Id*. *Knoedler* found that enforcement under state law of a federal standard of care, *i.e.*, the LIA, does not undermine national uniformity. *Id*. at 666. *Knoedler* held that the LIA did not preempt the railroad's claims of indemnification, contribution, and breach of contract, which were based on the LIA. *Id*. at 669; *but see Roth v. I & M Rail Link, L.L.C.*, 179 F. Supp. 2d 1054, 1064 (S.D. Iowa 2001) (holding state law claims based on LIA violations were preempted, noting "states' various liability-creating-premises in common-law claims based on violations of safety statutes can, in some instances, create non-uniform results and conflict with federal requirements for enforcement of the LIA under FELA").

*Knoedler* is distinguishable from the instant action. Here, a railroad employee brings state law claims against the manufacturers and installer of locomotive equipment. In *Knoedler*, the employees had settled their claims against the railroad, and the railroad brought state law claims against the supplier and servicer of locomotive equipment. *Knoedler* distinguished the claims of employees from the claims of the railroad, noting that employees must bring claims for injuries against their employers under the FELA. 781 F.3d at 659 ("an injured employee must bring an action against his employer under the [FELA]"); *id.* at 663 ("railroad employees can only enforce [the LIA] through the FELA"). *Knoedler* determined that the railroad could assert contribution and indemnification claims based on LIA violations against the supplier and servicer. *Id.* at 669. Because *Knoedler* did not address whether the LIA preempts a railroad employee's claims against a locomotive equipment manufacturer or installer, it is inapposite to the claims at issue here.

Moreover, *Knoedler* addressed state law claims that differ from those asserted by Ward. In *Knoedler*, the railroad had withdrawn its negligence and product liability claims, and had amended its complaint to clarify that its remaining claims were based on violations of the LIA. 781 F.3d at 660 n.3. The Third Circuit distinguished cases in which the plaintiffs asserted contribution and indemnification claims based on LIA violations

from cases in which the claims were based on theories of negligence, strict liability, and breach of warranty. *Id.* at 666 n.15 (citing *Stevenson,* 2009 WL 129916, at *1, and *Union Pacific*, 714 N.W.2d at 234). Here, the Complaint asserts state law claims alleging strict product liability, manufacturer defect, design defect, and negligence, with no mention of any federal standard of care, or any violation thereof.

Ward concedes that the Complaint does not mention the LIA, but maintains that his claims against Defendants are "premised on a violation of the duties and standards of care stemming from the LIA itself." (DE #65 at 10; DE #66 at 10 (same); *see* DE #67 (Soo Line's objection to motions to dismiss).)[6] Ward does not identify any Complaint paragraphs indicating that his claims against Seats and Nordic are based on the LIA, but rather, cites the Complaint in its entirety. (DE #66 at 10.) Regarding GE, the Complaint alleges that GE negligently "failed to report" that the seats "were inferior and not equal to railroad industry standards" and "did not meet the performance standard required of locomotive cabin

---

[6] Ward sought to amend the Complaint to "conform with the recent Third Circuit decision in [*Knoedler*]," after the parties had agreed on a briefing schedule for the instant motions to dismiss. (DE #51 at 2.) The Court denied Ward's motion as untimely, noting that *Knoedler* was issued almost a full year before Ward filed his motion. (DE #63 at 4.) Because the Court finds that *Knoedler* is distinguishable, even if the Magistrate Judge had found the amendment to be timely, the amendment likely would have failed because of futility.

seats," without indicating to whom GE was to report. (DE #65-1 at 24.) Even if these allegations asserted state law claims based on LIA violations, the differences between *Knoedler* and the instant action cannot be ignored. The Court will not stretch *Knoedler's* non-precedential holding to apply to state law claims asserted by a railroad employee.[7]

Ward also relies on case law cited in *Knoedler* regarding the Safety Appliance Acts ("SAAs"), 49 U.S.C. § 20301, *et seq.,* to assert that the LIA does not preempt his claims. As *Knoedler* notes, both the SAAs and the LIA regulate locomotive equipment, and neither statute provides for private enforcement; instead, injured employees must seek a remedy under the FELA. 781 F.3d at 663. In *Crane v. Cedar Rapids & Iowa City Railway Company*, the Supreme Court held that while a railroad employee can enforce a violation of the SAAs through the FELA, "the nonemployee must look for his remedy to a commonlaw action in tort." 395 U.S. 164, 166, 89 S. Ct. 1706, 23 L. Ed. 2d 176 (1969). In *Tipton v. Atchison Topeka & Santa Fe Railway Company*, the Supreme Court held that the

---

[7] Ward also argues that the Complaint alleges conduct, conditions and injury "consistent with" the standards promulgated by the LIA. (DE #66 at 10; *see* DE #65 at 13 (maintaining that his claims of injury due to a defective seat are "entirely consistent with the policy, purpose and scheme of the LIA").) But consistency is not the test for LIA preemption. *See Roth,* 179 F. Supp. 2d at 1063 ("When Congress intends a statute to have a broad preemptive effect, however, preemption is not precluded simply because a state law is consistent with the statute's substantive requirements.") (citations and internal quotations omitted).

SAAs "do not give a right of action for their breach, but leave the genesis and regulation of such action to the law of the states." 298 U.S. 141, 147-48, 56 S. Ct. 715, 80 L. Ed. 1091 (1936) (employee who was not engaged in interstate commerce could assert state law claim against railroad for injury resulting from a SAAs violation). The Court finds *Crane* and *Tipton* to be distinguishable because neither holds that a railroad employee may bring state law claims against a manufacturer of locomotive equipment based on a violation of the SAAs. Moreover, other courts have noted that "the SAA does not have the same broad preemptive effect that the LIA has." *Roth,* 179 F. Supp. 2d at 1062 (citing *Napier*, 272 U.S. at 611); *see also Knoedler*, 781 F.3d at 673 ("The effect of the [SAA] cases on the LIA is at least questionable after *Kurns*.") (Hardiman, J., dissenting).

Finally, Soo Line objects to the dismissal of Seats and GE, asserting that it has pled the affirmative defense of nonparty fault of Seats and GE in its answer to Ward's complaint. Ind. Code § 34-51-2-14. None of the parties responded to this objection. In Indiana, a defendant may preserve its right to assert a nonparty defense against a dismissed defendant by making a timely objection that asserts an intent to assert a nonparty defense against the dismissed defendant. *Bloemker v. Detroit Diesel Corp.*, 687 N.E.2d 358, 359-60 (Ind. 1997). The Court finds that Soo Line has preserved its right to assert a nonparty defense

as to Seats and GE. *See Henderson v. Prerovsky*, No. 1:08-cv-0717, 2009 WL 1311095, at *1 (S.D. Ind. May 11, 2009) (holding that by making an objection, a defendant had "properly preserved its right to assert nonparty defenses with respect to [other defendants], but that objection will not preclude their dismissal").

CONCLUSION

For the reasons set forth above, Nordic's Motion to Dismiss (DE #53) is **GRANTED,** and GE's Motion to Dismiss (DE #55) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS** Counts II, III, VI, VII, and VIII of the Complaint (DE #65-1) **WITH PREJUDICE.** Count I of the Complaint (DE #65-1), and Count III of the Second Amended Complaint (DE #28), remain pending.

**DATED: June 21, 2016**  /s/ **RUDY LOZANO, Judge**
**United States District Court**