# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| RONALD WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 2:14-CV-00001 |
| ) | |
| SOO LINE RAILROAD ) | |
| COMPANY d/b/a CANADIAN ) | |
| PACIFIC, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion for Judgment on the Pleadings, filed by Defendant, Soo Line Railroad Company d/b/a Canadian Pacific ("CP Rail"), on February 6, 2017 (DE #95). For the reasons set forth below, the Motion for Judgment on the Pleadings (DE #95) is **GRANTED**. Count I of the complaint (DE #65-1), and Count III of the Second Amended Complaint (DE #28) are **DISMISSED WITH PREJUDICE**. Additionally, the Clerk is **ORDERED** to **CLOSE** this case.

BACKGROUND

As set forth in this Court's previous order dated June 21, 2016 (DE #73), this case has a lengthy history. Plaintiff Ronald Ward ("Ward") alleges he was injured on June 8, 2013, while sitting on a locomotive engineer's seat that collapsed. Ward was then

employed by defendant CP Rail, and was assigned to operate a locomotive on a job commonly known as the "Windsor (Canada) to Elkhart (Indiana)" job. Ward's injury allegedly occurred in Windsor, Ontario, Canada.

On January 2, 2014, Ward filed a federal complaint against CP Rail under Cause Number 2:14-CV-1. The Court later granted Soo Line's uncontested motion for judgment on the pleadings, and dismissed Counts I and II of Ward's Second Amended Complaint. (DE #40.) Count III of the Second Amended Complaint remained pending against CP Rail, and is the subject of the instant motion for judgment on the pleadings.

On June 3, 2015, Ward filed a separate cause of action in Illinois state court, alleging claims against: (1) CP Rail, (2) Nordic, (3) Seats, (4) GE, and (5) Knoedler, Inc. d/b/a Knoedler Manufacturers, Inc. ("Knoedler"). (DE #65-1.) The state court complaint ("Complaint") was removed to federal court, transferred to this division of the Northern District of Indiana, and opened as Cause Number 2:15-CV-400. Cause Numbers 2:14-CV-1 and 2:15-CV-400 were consolidated, with all filings to be filed only in Cause Number 2:14-CV-1. Count I of the Complaint alleged negligence against Soo Line. Count II alleged strict product liability, manufacturer defect, and design defect of the locomotive seat against Seats. Count III alleged negligence against Seats. Counts VI and VII alleged the same theories of liability, respectively,

2

against Nordic. Count VIII alleged that GE negligently installed the locomotive seat that injured Ward, and failed to report problems with the seat and its installation instructions.

Seats, Nordic and GE filed a motion to dismiss with this Court (DE #55), arguing that the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701, *et seq.*, preempts all of Ward's claims against them. This Court entered an order granting that motion on June 21, 2016 (DE #73), dismissing Counts II, III, VI, VII, and VIII of the complaint (DE #65-1) because they were preempted by the LIA. Count I of the complaint (DE #65-1) remained pending.

In front of the Court now is CP Rail's motion for judgment on the pleadings for Count I of the complaint (DE #65-1), stating a claim for negligence against CP Rail; and Count III of the Second Amended Complaint (DE #28), stating a very similar claim for negligence against CP Rail. CP Rail's argument in its initial memorandum is in its entirety:

> Plaintiff's state common law negligence claims against CP Rail center on a broken locomotive seat. These negligence claims are no different than the claims he asserted against Seats, Inc. and GE. Those claims failed because this Court determined that Plaintiff asserted "state law claims alleging [. . .] negligence, with no mention of any federal standard of care, or any violation thereof." Plaintiff's negligence claims against CP Rail also contain "no mention of any federal standard of care, or any violation thereof." His state common law claims against CP Rail are therefore preempted by the LIA.

(DE #96 at 2-3.)

In response, Plaintiff argues that the common law negligence claims against CP Rail are not preempted by the LIA, FELA, or any other federal statutes. (DE #101 at 3.) He contends the negligence claims are completely different than the barred claims of strict products liability, manufacturer defect, and design defect of the locomotive seat. (DE #101 at 5.)

CP Rail filed a reply on April 7, 2017 (DE #104). In its reply, CP Rail relies heavily upon *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 631 (2012), arguing that the claims of negligent maintenance and inspection of the seat, and failure to warn Plaintiff that the seat was dangerous, are claims that focus on the locomotive seat, and are preempted by the LIA.

Plaintiff filed a sur-reply on April 10, 2017, arguing that the LIA "does not preempt state law claims for failure to warn an employee of a dangerous, unsafe condition of an engineer's seat." (DE #105-1 at 1.) Finally, CP Rail filed a response to the sur-reply, citing to *Kurns*, and arguing that Court found state law failure to warn claims are specifically preempted by the LIA. (DE #110.) This motion is fully briefed and ripe for adjudication.

DISCUSSION

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is reviewed under the same standard as a motion to dismiss under 12(b) . . . ." *Flenner v. Sheahan*, 107

4

F.3d 459, 461 (7th Cir. 1997); *see also R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003). Where a party moves for judgment on the pleadings, "the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Housing Auth. Risk Retention Group, Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (quotation omitted).

In ruling on a motion for judgment on the pleadings, the court must accept as true "all well-pleaded allegations" and view them in the light most favorable to the nonmoving party, as well as accept as true all reasonable inferences to be drawn from the allegations. *R.J. Corman*, 335 F.3d at 647; *see also Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

In granting the motions to dismiss filed earlier in this case by Nordic, Seats, and GE, this Court set forth the purpose of the LIA and its preemptive effect. (DE #73 at 5-17.) The LIA sets standards for locomotives and its "parts and appurtenances," generally requiring them to be "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1). The Supreme Court held in *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605 (1926), that the Boiler Inspection Act ("BIA," which is LIA's predecessor), "occupied the field of regulating locomotive equipment . . . so as to preclude state

5

legislation . . . .[and] was intended to occupy the field . . . [and] extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Id.* at 607, 611.

In *Kurns*, the Supreme Court reiterated that the LIA preempts the whole field of regulating locomotive equipment. 565 U.S. 625. That case involved a plaintiff who alleged state common-law claims of defective design and failure to warn of the dangers posed by asbestos in locomotives and locomotive parts. The Court in *Kurns* directly decided the issue of "whether the LIA pre-empts petitioners' state-law claims that respondents defectively designed locomotive parts and failed to warn [plaintiff] of dangers associated with those parts." *Id.* at 630. It found that "Petitioners' common-law claims for defective design and failure to warn are aimed at the equipment of locomotives. Because those claims 'are directed to the same subject' as the LIA, *Napier* dictates that they fall within the pre-empted field." *Id.* at 634. The Supreme Court directly addressed the failure to warn claim, and reasoned that the "gravamen" of the plaintiff's failure to warn claims was still that he suffered harmful consequences resulting from his exposure to asbestos contained in locomotive parts. *Id.* at 635. "Because petitioners' failure-to-warn claims are therefore directed at the equipment of locomotives, they fall within the pre-empted field defined by *Napier*." *Id.* at 635.

In this case, Count I of the complaint (DE #65-1), which contains the most exhaustive list of negligence claims, states that CP Rail was guilty of one or more of the following acts or omissions:

> (a) Carelessly and negligently failed to provide the Plaintiff with a reasonably safe place to work;
>
> (b) Carelessly and negligently failed to maintain and keep in good condition the engineer's seat on locomotive 8905;
>
> (c) Carelessly and negligently failed to have its mechanical department inspect the engineer's seat on locomotive 8905;
>
> (d) Carelessly and negligently failed to warn the Plaintiff of the dangerous and unsafe condition of the engineer's seat on locomotive 8905, when the Defendant knew or in the exercise of ordinary care should have known, of both the risk of harm and unsafe condition of its engineer's seat;
>
> (e) Carelessly and negligently permitted the engineer's seat on locomotive 8905 to be and remain in an unsafe and dangerous condition;
>
> (f) Carelessly and negligently permitted engineer's seats to be installed in its locomotive cabins, including the locomotive Plaintiff was operating on June 8, 2013, when it knew or should have known of the dangers and unsafe conditions caused by faulty installation;
>
> (g) Carelessly and negligently permitted engineer's seats to be installed in its locomotive cabins when it knew or should have known that the engineer's seats being installed were inadequate and below the standards of the industry.

(DE #65-1 at 3.)

At first blush, these allegations seem to all be directed at the engineer's seat in the locomotive, which seems to be preempted

as part of the entire locomotive field in accordance with the LIA. Plaintiff makes two main arguments about why the negligence claims should not be barred by the LIA. First, he details the purpose of the FELA and cites to cases holding that the FELA does not reach common law claims that do not interfere with the FELA statute's legislative purpose. Second, he argues the common law claims revolve around providing a safe work place to employees; therefore, the claims do not involve regulating locomotive equipment and are not preempted by the LIA. Both of these arguments are unpersuasive.

First, Plaintiff cites to several FELA cases in its response memorandum in an attempt to argue that the negligence claims are not preempted by the LIA. Plaintiff relies heavily on *Harris-Scaggs v. Soo Line R.R. Co.*, 2 F. Supp. 2d 1179 (E.D. Wis. 1998), which involved an employee's complaints of racially derogatory comments and state law emotional distress claims. There, the court found that "plaintiffs' claims for negligent and intentional infliction of emotional distress in this action are not cognizable under the FELA" and the claims were thus not preempted under FELA. *Id.* at 1183-86. However, *Harris-Scaggs* deals with FELA preemption which only provides conflict preemption (preempting only state law claims which are in direct conflict with the FELA), but the LIA provides a much more-encompassing field preemption. *See Kurns*, 565 U.S. at 631 ("We deal here only with the latter, so-called field

pre-emption."). Unlike FELA, the LIA "occup[ies] the entire field of regulating locomotive equipment to the exclusion of state regulation." *Id.* at 637. Not only does *Harris-Scaggs* deal with a different statute, but it is also distinguishable because it involves racially derogatory comments made to a railroad employee. *Harris-Scaggs* did not involve an injury sustained from locomotive equipment.

*Lancaster v. Norfolk & Western Ry.* Co., 773 F.2d 807, 815 (7th Cir. 1985), also involved the FELA and a tort unrelated to locomotive equipment (supervisor's harassing misconduct), as did *Ray v. Consolidated Rail Corp.*, 938 F.2d 704 (7th Cir. 1991) (analyzing the FELA and supervisor's harassment of employee). *Shaffer v. National R.R. Passenger Corp.*, No. 11 C 970, 2011 WL 4916493 (N.D. Ill. Oct. 17, 2011), involved a retaliatory discharge claim. None of these cases shed any light on the specific issue in this case - whether Plaintiff's common-law claims or state safe-workplace claims are preempted by the LIA.

Plaintiff's second main argument is that the claims against CP Rail are for negligent acts or omissions in failing to create a safe work environment, and thus do not invoke "regulating locomotive equipment" like the claims previously dismissed against the other defendants. (DE #101 at 5-7.) The plain words of the complaint render this argument inaccurate. Plaintiff has alleged CP Rail negligently:

9

> failed to provide the Plaintiff with a reasonably
> safe place to work . . . failed to maintain and
> keep in good condition the engineer's seat . . .
> failed to have its mechanical department inspect
> the engineer's seat . . . failed to warn the
> Plaintiff of the dangerous and unsafe condition of
> the engineer's seat . . . permitted the engineer's
> set on locomotive 8905 to be and remain in an
> unsafe and dangerous condition . . . permitted
> engineer's seats to be installed in its locomotive
> cabins . . . when it should have known of the
> dangers and unsafe conditions caused by faulty
> installation; [and] . . . permitted engineer's
> seats to be installed in its locomotive cabins when
> it knew or should have known that the engineer's
> seats being installed were inadequate and below the
> standards of the industry.

(DE #65-1 at 3.) All of these claims are centered on the safety of the locomotive seat. Indeed, that is the only part of the locomotive to which Plaintiff refers when alleging CP Rail failed to provide him with a safe workplace.

Plaintiff cites Indiana Code Section 22-1-1-10, arguing the public policy of the state is for every employer to furnish safe employment for their employees. (DE #101 at 7.) Yet, the Supreme Court tackled this question head on in *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605 (1926), where the Plaintiff argued a Georgia statute which prescribed an automatic door to the firebox and a Wisconsin statute which required a cab curtain, were not preempted by the Boiler Inspection Act (LIA's predecessor). The purpose of the Georgia statute was to protect "the health of the fireman by protecting him from exposures to extremes of heat and cold," protect their eyesight, and protect the employees in the

event of an explosion in the fire box. *Napier*, 272 U.S. at 609-10. The purpose of the Wisconsin statute was "to protect engineers and firemen from the weather during the winter season." *Id.* at 610. Therefore, those statutes, like Indiana Code section 22-1-1-10, were focused on providing a safe workplace for railroad employees. And yet the Supreme Court found those statutes based on workplace safety did not prevent LIA preemption. *Napier* ruled that the LIA manifests "the intention to occupy the entire field of regulating locomotive equipment" by reserving for the federal agency the authority to "set[] the standard" by which a locomotive's "fitness for service shall be determined." *Id.* at 611-12. That Court went on to explain the preempted field "extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Id.* at 611. And that the LIA preempts state requirements directed at the locomotive equipment "however commendable or however different their purpose." *Id.* at 613.

In this case, Plaintiff's negligence claims against CP Rail are all based upon whether CP Rail failed to provide safe locomotive equipment; therefore, the claims are preempted by the LIA. "Because the injured engineer's negligence and product-liability claims may affect 'the design, the construction, and the material' of locomotives, these claims would fall within the preempted field broadly defined by *Napier* and *Kurns*." *BNSF Ry. Co.*

11

*v. Seats, Inc.*, No. 4:16-CV 3121, 2017 WL 318636, at *4 (D. Neb. Jan. 23, 2017) (quoting *Napier*, 272 U.S. at 611).

The Court notes that in its sur-reply memorandum, Plaintiff concedes that the LIA "preempts state law claims as to design, construction, maintenance, installation of locomotive seats." (DE #105-1 at 1.) However, Plaintiff still contends that the LIA "does not preempt state law claims for failure to warn an employee of a dangerous, unsafe condition of an engineer's seat." *Id.* The Supreme Court directly addressed and rejected this argument. In *Kurns*, the petitioners argued that "even if their design-defect claims are pre-empted, their failure-to-warn claims do not suffer the same fate." *Kurns*, 565 U.S. at 634. The Petitioners in *Kurns* contended that claims did not fall within the LIA's preemption because "the basis of liability for failure to warn . . . is not the design or manufacture of a product, but is instead the failure to provide adequate warnings regarding the product's risks." *Id.* The Supreme Court could not have been clearer in finding:

> We disagree. A failure-to-warn claim alleges that the product itself is unlawfully dangerous unless accompanied by sufficient warnings or instructions. Restatement (Third) of Torts: Products Liability § 2(c) (1997) (A failure-to-warn claim alleges that a product is defective "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, . . . and the omission of the instructions or warnings renders the product not reasonably safe"); *see also id.*, Comment l, at 33 ("Reasonable designs and instructions or warnings both play important roles in the production and

12

> distribution of reasonably safe products"). Thus, the "gravamen" of petitioners' failure-to-warn claims "is still that [plaintiff] suffered harmful consequences as a result of his exposure to asbestos contained in locomotive parts and appurtenances." 620 F.3d at 398, n.8. Because petitioner's failure-to-warn claims are therefore directed at the equipment of locomotives, they fall within the pre-empted field defined by *Napier*, 272 U.S., at 612. . . . For the foregoing reasons, we hold that petitioners' state-law design-defect and failure-to-warn claims fall within the field of locomotive equipment regulation pre-empted by the LIA, as that field was defined in *Napier*.

*Kurns*, 565 U.S. at 635-38.

Moreover, the *Kurns* Court also directly addressed the petitioners' contention that "the LIA's pre-emptive scope does not extend to state common-law claims, as opposed to state legislation or regulation." *Kurns*, 565 U.S. at 637. It found that *Napier* held the LIA "occup[ied] the entire field of regulating locomotive equipment" to the exclusion of state regulation. *Id.* (quoting *Napier*, 272 U.S. at 611-12.). And "[t]hat categorical conclusion admits of no exception for state common-law duties and standards of care." *Kurns*, 565 U.S. at 637. The *Kurns* Court therefore "conclude[d] that state common-law duties and standards of care directed to the subject of locomotive equipment are pre-empted by the LIA." *Id.* As such, the failure to warn claims fell within the field of locomotive equipment regulation and were pre-empted by the LIA. *Id.*

Similarly, in this case, the gravamen of Plaintiff's failure to warn claims is that he suffered harm as a result of the

13

engineer's seat in the locomotive. These claims fall within LIA's preemption, as dictated by *Kurns*. Moreover, this is consistent with this Court's earlier ruling on June 21, 2016, on the previous motion to dismiss, where this Court already acknowledged that "[t]he Supreme Court has held that 'state-law design-defect and failure-to-warn claims fall within the field of locomotive equipment regulation pre-empted by the LIA.'" *Ward v. Soo Line R.R. Co.*, No. 2:14-cv-00001, 2016 WL 3402772, at *3 (N.D. Ind. June 21, 2016). This Court concluded that Plaintiff's claims against Seats and Nordic fell "squarely within the field of locomotive equipment regulation contemplated by the LIA" and cited, *inter alia*, *Estate of Brust v. ACF Indus., LLC*, 127 A.3d 729, 737 (N.J. Super. Ct. 2015) ("state law claims for defective design of the locomotive equipment, and for failure to warn about its risks, fall within the field preempted by the LIA"); *Bonner v. Union Pacific R.R. Co.*, No. CV03-134, 2005 WL 1593635, at *10 (D. Idaho Jul. 6, 2005) (holding LIA preempted common law claim for failure to warn); *Law v. General Motors Corp.*, 114 F.3d 908, 910-12 (9th Cir. 1997) (holding LIA preempted claims including failure to warn). *Id.* at *3.

Plaintiff starts off his response brief by arguing that if his claims are preempted, he would be deprived of a valid claim against his employer, which would be a violation of his constitutional right of access to the courts. (DE #101 at 1-2.) This argument

14

was considered by the Court in *Mehl v. Canadian Pac. Ry., Ltd.*, 417 F.Supp.2d 1104, 1120 (D. N.D. 2006), where injured residents of a community near railroad tracks brought an action against railway companies stemming from a train derailment. In analyzing whether the state law tort claims against the railroad were preempted by the Federal Railroad Safety Act and pertinent regulations, the Court reasoned:

> While federal preemption often means that there is no remedy to a claimant, in many instances unfortunately this result is necessary to vindicate the intent of Congress. By pervasively legislating the field of railroad safety, Congress demonstrated its intent to create national standards and to preempt state regulation of railroads. If state common law tort claims were permitted to proceed despite this Congressional intent, on the ground that the purported tortfeasor had in some way allegedly failed to comply with the federal standards, then manufacturers would inevitably b[e] subjected to varying interpretation of the federal regulations in the different states. Inevitably, these tort actions would generate precisely those inconsistencies in railroad safety standards that congressional action was intended to avoid.

*Mehl*, 417 F.Supp.2d at 1120 (quoting *Ouellete v. Union Tank Car Co.*, 902 F.Supp. 5, 10 (D. Mass. 1995)). This Court concurs with the logic articulated in *Mehl*.

CONCLUSION

For the reasons set forth above, the Motion for Judgment on the Pleadings (DE #95) is **GRANTED**. Count I of the complaint (DE #65-1), and Count III of the Second Amended Complaint (DE #28) are

15

**DISMISSED WITH PREJUDICE**. Additionally, the Clerk is **ORDERED** to **CLOSE** this case.

DATED: **May 8, 2017**                     /s/ RUDY LOZANO, Judge
                                           United States District Court